The Chahcellor.
The parties in this cause are stockholders, and the defendants are directors of “the Eiverton Improvement Company,” a corporation created by the laws of this state. The bill is filed to set aside a transfer of six shares of the capital stock of said company, made by order of the board of directors to themselves individually, and to restrain the holders of the said stock from selling or transferring the same, or from voting thereon at the next or any ensuing election of the said company. The bill was filed three days before the then next ensuing election for directors. The injunction was allowed, so far as to restrain the defendants from a sale or transfer of the said shares. But as the effect of restraining the defendants from voting upon the stock might have been to change the result of the election, and the consequent control of the affairs of the company against the wishes of those holding the legal title to a majority of the shares, without an opportunity of their being heard in defence of the charges in the bill, the injunction in that respect was denied. Answers have been filed, and the *382 cause has been brought on for final hearing upon the pleadings and evidence.
The capital stock of the company consisted of $60,000, divided into one hundred and twenty shares, of $500 each. Of these shares, on the first of June, 1859, the company held fifty shares, which had been taken in payment for land purchased at the par value of $500 each, thirty-six shares which had been taken at the value of $400 each, and ten shares which were held by the company as collateral security for debts due, leaving but twenty-four shares in the hands of individual stockholders. Of these twenty-four shares, eleven were held by the defendants; thirteen shares were held by other stockholders, twelve of which were held by the complainants.
At a meeting of the directors, held on the second of April, 1861, the following resolutions were adopted: The treasurer is hereby directed to require the payment of all sums due by members for interest on or before the fifteenth instant. The treasurer shall notify each member who complies with the foregoing resolution that he is entitled to purchase from the company one share of stock at a price equivalent to that paid for stock by the company in settlement of land balances, on the twenty-fourth of December, 1857. On the sixteenth of April, the treasurer reported to the directors that, pursuant to the resolution of the board at the last meeting, he had demanded the payment of all interest due, as directed by the minutes of the last meeting, and that all have paid the same, excepting Daniel L. Miller, jun. A committee was thereupon appointed to confer with Miller in relation to his indebtedness to the company for land and interest. A dividend of thirty per cent, on the stock of the company, equivalent to $150 per share, was declared payable in cash on demand, and it was resolved that all resolutions heretofore passed to receive stock as a security at a named valuation, or to. buy or to sell the same at a fixed value, shall be ■of no binding effect hereafter. At the date of the resolution, the only stockholders indebted to the company were *383 six of the directors, who are defendants in this cause, and Daniel L. Miller, jun. Miller’s stock, though standing partly in his name, was held either by individuals or by the company, as collateral security for his indebtedness. The six directors having paid the interest due from them, respectively, to the company, one share of stock was transferred to each of them, and a dividend of $150 paid on each share. It is this transfer which the bill seeks to set aside as fraudulent.
The resolutions of the board of directors, authorizing the transfer of the stock to themselves, were unauthorized and illegal.
By a supplement to the act concerning corporations, approved on the twenty-eight of February, 1849, and which was in force at the date of the charter of the Biverton Improvement Company, it is enacted that all companies incorporated under the laws of this state, whose charters do not designate their places of meeting, shall hold their business meetings and the meetings of their directors in the state of Mew Jersey. The annual meetings of the company are directed to be held at Eiverton. Independent of these statutory provisions, it is a rule of law that a private corporation whose charter has been granted by one state, cannot hold meetings and pass votes in another state. It exists by force of the law that created it; and where that law ceases to exist, and is not obligatory, the corporation can have no existence. Miller v. Ewer, 14 Shepley 509; Bank of Augusta v. Earle, 13 Peters 588; Runyan v. The Lessee of Coster, 14 Peters 129; Angell & A. on Corp., § 104, 274.
It appears that the resolutions of the board of directors which authorized the transfer of the stock in question were passed at a meeting held not in this state, but in the city of Philadelphia. They are therefore void, and the transfer of stock in pursuance of such resolutions to the directors who participated in the illegal proceedings can vest no title in them.
This consideration alone would be sufficient to dispose of the claim of the defendants, and establish the right of the *384 complainants to the relief prayed for. But the granting and continuing of injunctions rests mainly on equitable grounds, and is not exercised for the mere purpose of protecting legal rights irrespective of the claim of the party to equitable relief. It is proper, therefore, to consider the real character of the rights of the parties aside from this legal difficulty, and this course is the more appropriate, as it may finally dispose of the questions in controversy and prevent further litigation.
The ostensible design of the resolutions was the prompt collection of interest due the company. As an inducement to pay the interest, each member who made payment within thirteen days was to be entitled to a share of stock at a stipulated price irrespective of its value. The real design was to give to the directors a majority of the stock, and thus enable them to control the election and keep themselves in office. This is apparent from the whole transaction, and is attempted to be justified, rather than denied, by the answer of the defendants. It operated precisely as it was designed. The six directors paid their interest, and received, as a bonus for so doing, each a share of stock, at the price fixed by themselves. Miller, the only other party interested, failed to pay, either because he was unable, or because he had no notice, and it is quite immaterial which. The resolution called for payment in thirteen days from its adoption. It designated no time when notice should be given to the parties interested. If notice had been given to Miller one day before the time limited for payment had expired, it would have been a compliance with its requirements. In fact, by the terms of the resolution, no notice was to be given’ under it, except to those who paid. The design and effect of the resolution was to transfer the property of the company to the directors without value. The transaction does not purport to be a sale of the stock at its fair value, but a transfer of the property of the company to its debtors, by way of inducement to them to pay their honest debts to the company.
The material charges of the bill are not denied. The de *385 fence attempted to be set up rests substantially upon the following facts. The property of the company being estimated to be of the value of $60,000, it was decided by the company that the capital should be that amount, and that twelve shares of stock, of $500 each, should be issued to each of the proprietors, their interests being equal. Subsequently James M. Miller, one of the shareholders, by purchasing the interest of two others, became the owner of thirty-six shares. There were afterwards but seven proprietors, who were also directors of the company, and being desirous of holding their lands separately they made sales among themselves of most of the unimproved land, in proportion to their respective interests, it being understood that title should be made to the purchasers as they respectively paid the price of the land purchased with interest. A resolution was subsequently adopted authorizing deeds to be made to the purchasers on giving their bonds satisfactorily secxtred, and the stock of the company to be accepted as security at two-thirds of its par value. On the twenty-first of December, 1857, it was resolved by the directors that the present land balances, and interest thereon, be received in the stock of the company at a valuation of $400 per share.
At the date of this resolution, fifty shares of the capital stock appear to have been owned by the company, ten shares to have been held by it as collateral, and sixty shares to have been held by individual stockholders. Of these, forty-two shares were in the hands of six of these defendants, who were then directors, and of the estate of Eodman Wharton, deceased, and the balance were owned by James M. Miller, who was the other director, though his stock was held either by the company or by individuals as collateral.
Out of the forty-two shares held by Wharton’s estate and by these defendants, thirty-four were transferred to the company, under the resolution, in payment of land balances, leaving only eight in the hands of the defendants. Of the shares owned by Miller, only two were transferred to the company. The effect of this operation was that but twenty *386 shares were left in the hands of the stockholders, of which eight only were held by these defendants, and the remaining twelve shares by Miller, and consequently the control of the corporation was transferred from the defendants to Miller, the other director.
This result, it is alleged, was brought about by the fraudulent conduct of Miller in refusing to transfer his shares to the company, according to the agreement and understanding of the parties at the time of the adoption of the last mentioned resolution and of the transfer of stock by the other stockholders.
It is further alleged that Miller is enabled thereby- not only to control the company, but to defeat the entire design and policy of the. act of incorporation, which was not to create a company for the purposes of speculation, or mainly to advance- the pecuniary interests of the stockholders, but by parcelling out the land among the shareholders, and keeping the enterprise under their control, to secure tQ themselves peaceful and quiet homes, secure from such nuisances as frequently affect country residences; that' these considerations led them to embark in the enterprise and to build upon the property, and that they never would have consented to transfer to the company their stock at the price agreed upon, if they had supposed or anticipated that they were thereby surrendering the control of the property to men who owned no portion of the real estate, and who had no interest in carrying out the great purpose of the charter.
I think the evidence warrants the conclusion, that the defendants, at the time of the adoption of the resolution and of the transfer of their stock, acted under the belief that Miller would transfer his stock to the company in payment of the land balance due from him, and that such belief was confirmed by the language of Miller. But I do not find satisfactory evidence that there was any contract to that effect or that Miller’s conduct was fraudulent. The resolution does not purport to be obligatory in any event. It purports to be a privilege granted, which any member was at liberty *387 to accept or not at Ms pleasure. There is nothing in the charter or by-laws of the company to prevent any member from disposing of his stock at his pleasure. Mor does anything appear in the minutes of the board of directors, in relation to this transaction, indicating a purpose to deprive any member of the absolute control over his stock. The shares owned by Miller were not then standing in his name, but several of them were held by these complainants as security for debts due. His right to control them was not absolute. It -would seem, moreover, from the evidence that even if ho had transferred enough of his stock to the company to satisfy their claim against him, he would still have held a majority of the stock which was standing in the names of individuals. It does not appear to me that the evidence would be sufficient to warrant the court in enforcing the specific performance of the contract to transfer the stock or to establish against Miller the charge of fraud. But admitting that the evidence would be sufficient for either or both of these purposes, how can that justify the conduct of these defendants in violating their duty as directors of the corporation ? If Miller lias defrauded them by a violation of his contract, it surely will not justify a violation of their duty as directors, oven if Miller bo, as they allege, the only party to suffer by the wrong.
These defendants, it is manifest since the transfer of their stock to the company, and the refusal to transfer by Miller, have acted upon the assumption (it may be conscientiously, but beyond all question erroneously,) that they were justified in excluding Miller from the control of the corporation, which they allege that he fraudulently obtained. Thus, when it was ascertained, previous to the election of 1859, that Miller held twelve shares of stock, and these defendants only eight, they, by resolution, instructed their president to vote, and he did vote upon the thirty-four shares of stock which had been transferred to the company by them, and thereby illegally acquired the control of the election. Nix. Dig. 141, § 18.
*388 In I860, the control of the election was again acquired by inducing a party, to whom three of Miller’s shares had been pledged as a security for debt, to transfer them to these defendants.
In 1861, Lennig, one of the complainants, having redeemed four shares which had been previously assigned to the company by Miller as collateral security for his indebtedness, the majority of the stock was again in the hands of the complainants or of Miller. The defendants thereupon caused six of the shares of stock belonging to the company to be transferred to themselves, with the design, it is not denied, of retaining themselves in office, and of defeating the purpose of Miller to control the operations of the company. Against this last wrong the complainants seek relief, to which they are clearly entitled.
' It is immaterial whether they hold the stock in their own right or as mere trustees for Miller. In either event their rights as stockholders are prejudiced by the wrongful acts of 'the defendants. .
The acceptance by the stockholder of a dividend upon his stock can be no ratification of the illegal conduct of the directors.
’ The complainants .are entitled to relief. The transfer of the stock must be set aside with costs, and the defendants enjoined from voting thereon.
As to the price of the stock, and the dividends thereon, the parties must be restored to the situation in which they stood before the transfer.
The bill filed by William D. Parrish and others against the complainants, which involves virtually the same questions, must be dismissed with costs.
"Under the arrangement entered into by counsel during the pending of the cause, a new election should at once be ordered by the acting directors.