HENRY BELLINGHAM

*v.*

THEODORE J. PALMER and EBENEZER A. SMITH.

Improved methods of procedure in courts of law will not strip a court of equity of its jurisdiction in matters of account; but where there is no trust relationship involved and jurisdiction rests solely upon the ground of complicated accounts, the present method of procedure in the law courts will be regarded in deciding whether the accounts are so complex that such courts cannot try them.

This bill is filed to compel the defendants to account. Bellingham engaged with the defendants to make sole and heel taps for the latter, and he was to receive a certain price per hundred each. He worked with his own servants, in his own buildings, with his own machinery. He commenced in September, 1889, and continued four years and four months. His business habit was to take an account of the week's work on each Saturday, and deliver it to the defendants. He has a complete account of the amount of his own work for the whole period. He was not paid in full each Saturday. By an arrangement between himself, the defendants and the lessor of the building occupied by

the complainant, the defendants paid the rent and charged it up to the complainant. By an understanding between the parties also, all bills incurred by the complainant for repairing his machinery were paid by the defendants and charged up to the complainant. There were charged against Bellingham, therefore, the sums he received in cash, the amount paid by the defendants on Bellingham's account for rent and for repairs upon his machinery. In addition to this charge against Bellingham there was one for loss on account of damages claimed by customers, to whom two boxes of goods, manufactured by Bellingham, had been shipped. One of these boxes was returned, and the other not. The claim was on account of defective goods. There was also a charge for twine furnished to Bellingham. The right to charge the two items last mentioned, viz., for defects in goods and for twine, was in dispute.

I find that there was no undertaking by the defendants, as charged in the bill, that the defendants should keep the accounts of the dealings between the parties. The defendants kept such accounts in the ordinary course of their business, but they made no promises that they should be regarded as the accounts of both parties.

I find that during the four years and four months which this business relation continued between Bellingham and the defendants, the former, once or twice a year, inquired how his account stood, and the balance was stated to him. He never asked for a detailed account until after the dissolution of the partnership theretofore existing between the defendants, but after this dissolution he demanded a detailed statement.

His lawyer also, in an interview with Mr. Smith, one of the former partners, requested such a statement. Mr. Smith says that he offered to accord to the complainant the privilege of examining the books and the vouchers in a room in defendants' place of business. This offer was refused, and a statement of the account was demanded.

This statement of Mr. Smith is not denied, and I think is substantially true. After this interview the bill in this case was filed.

*Mr. Charles Borcherling*, for the complainant.

*Mr. Thomas Anderson*, for the defendants.

REED, V. C.

The question is, whether the facts are such as to warrant this court in assuming jurisdiction in this contest, and directing the defendants to account in a court of equity.

The equitable jurisdiction to compel an account rests upon three grounds—*first*, the existence of a fiduciary or trust relation; *second*, the complicated character of the accounts; and *third*, the need of discovery.

No fiduciary or trust relation is exhibited in this cause, therefore the right to an account cannot be rested upon that ground. Nor is the bill one purely for discovery.

The discovery asked is only incidental to the main relief sought, namely, an account. The bill therefore cannot be supported as one for discovery, and must rest upon the right to an account, for the rule is entirely settled that where discovery is sought as a mere incident to some other main relief, if the principal relief is denied, the suit must be dismissed. *Pennsylvania Railroad Co.* v. *Hoppock, 1 Stew. Eq. 261; Jewett* v. *Bowman et al., 2 Stew. Eq. 174; Foley* v. *Hill, 2 H. L. Cas. 28, 37, 42.*

Jurisdiction, therefore, if it exists at all, must rest upon the complicated character of the accounts, and the intricate character of the accounts must be such that if the case is tried at *nisi prius* it cannot be tried with any certainty that an accurate result would be reached. *Bliss* v. *Smith, 34 Beav. 508; Taff Vale Railway Co.* v. *Nixon, 1 H. L. Cas. 111; Foley* v. *Hill, 2 H. L. Cas. 28; Crane* v. *Ely, 10 Stew. Eq. 564.*

What will constitute this complexity of accounts is a matter from which little light can be obtained from an examination of the English reports. Every case seems to rest upon its own special features.

It is impossible, said Lord Collingham in *Martin* v. *North-eastern Railway Co., 2 Phil. 758*, with precision to lay down

rules or establish definitions as to the cases in which it may be proper to exercise jurisdiction.

The criterion is, whether the degree of intricacy is such as to deprive a court of law, by reason of its method of procedure, of the ability to properly investigate and decide. In applying this test, I think regard should be had to the modern alteration in the methods of trial in a court of law. When equity first assumed jurisdiction of complicated accounts, there was in a court of law no power to examine a party, to obtain discovery before trial, or to have an account stated by a referee. Now, it is true, that in those instances where a court of equity has acquired jurisdiction over a class of cases by reason of the absence of a legal remedy, it will not be deprived of such jurisdiction, either by the operation of a statute conferring similar jurisdiction upon the common-law courts, or by the adoption by the common-law courts of the principles and practices of the court of equity. *Frey* v. *Demarest, 1 C. E. Gr. 236.*

Therefore, in cases of account between persons holding a fiduciary relation, the right to an account in equity exists unchanged, although a court of law has now improved methods of procedure by which some of these matters can now be tried, and would exist unchanged, although the jurisdiction of courts of law should become complete in its procedure and suitable for the trial in such cases. But in cases of account other than those just mentioned, the jurisdiction of the court of chancery is a discretionary jurisdiction. The superior right of a court of law is admitted so long as that court can properly deal with the matters litigated.

Now, in determining whether a court of law can adequately deal with an account, I do not perceive why the present, and not the past, method of legal procedure should not be regarded. This is the rule in regard to bills for new trials exhibited in the court of equity. The propriety of such bills is not tested by the restricted power of courts of common law to grant new trials at the time when such bills were first entertained, but is tried by the present liberal practice of the court in this respect. As was observed in *Executors of Powers* v. *Administrator of*

*Butler, 3 Gr. Ch. 465:* " Upon examination of the numerous authorities, it will be seen that, as the courts of law have extended their jurisdiction over these subjects, the courts of equity have withdrawn their jurisdiction from it." This remark was reiterated in the case of *Hannon* v. *Maxwell, 4 Stew. Eq. 318, 329,* decided by the court of appeals.

So it seems to me that the question is whether a court of law can now adequately deal with the account. The question is simply adequacy of the remedy, and that should be decided by the present processes of legal investigation. As already remarked, these processes have become radically changed—so changed, in fact, that the remarks of Judge Finch, in his opinion in the case of *Marvin* v. *Brooks, 94 N. Y. 71, 80,* are almost as pertinent here as in the State of New York. Speaking of the jurisdiction of a court of equity in matters of account resting upon their complicity and also for discovery, he observed: " That the necessity for a resort to equity is now very slight, if it can be said to exist at all, since a court of law can send to a referee a long account, too complicated for the handling of a jury, and furnishes by the examination of the adverse witness before trial and the production and deposit of books and papers, almost as complete a means of discovery as can be furnished by a court of equity."

The power to refer, the power to previously examine witnesses and the power to obtain an inspection and copies of books and papers in actions at law, must be taken into account when the question of equity jurisdiction rests upon the single ground of the inadequacy of a court of law to reach satisfactory results in the trial of a legal cause of action.

These improved methods of procedure do not strip this court of jurisdiction in instances of complicated accounts, but when the degree of complexity which will put the case beyond the capacity of the law court to try is to be ascertained, then the present mode of trial is certainly a factor of importance.

There are still many cases in which a court of equity and a master can afford a fuller measure of relief than can a court of law, dealing with the report of a referee; but there are also

Bellingham *v.* Palmer.

cases of which courts of equity would once have assumed juris-
diction which, I think, should now be remitted to the legal
tribunals.

In my judgment, the present account is not one for equitable
cognizance.   As already observed, the quantity of manufactured
goods that was furnished by the complainant is entered in com-
plainant's own books.   The cash paid to him each week was
within his own cognizance and could have been, but was not
entered on his books.   So of the rents, the amount of which he
knew.   So of the repairs which he had had made.   These are
entered upon defendants' books, and, so far as appears, are all
entered.

So far the account appears to be one of great simplicity, in-
volving the simple addition of the sums charged.

The only contested items involve purely legal questions—
*first,* whether, under the contract between the parties, the com-
plainant was to pay for the twine used by him ; *second,* whether
there was an assent by complainant to the charge for damages
for defective goods, or a right to make such deduction arising
from the contract between the parties.

I see no difficulty in trying the case at law.   Indeed, if sit-
ting at circuit, I would not, as matters now appear, order a
reference.

If the complainant can compel these defendants to account, I
see no reason why each one of five hundred employes, to whom
wages have been paid on account, cannot compel the employer
to do the same, or why any person, after a few weeks' dealing
with a grocer on credit, has not the same privilege.

There is characteristic force in the remarks of Chief-Justice
Marshall, in his opinion in *Fowle* v. *Lawrason's Executors, 5
Pet. 495,* that "it cannot be admitted that a court of equity may
take cognizance of every action for goods, wares, merchandise
sold and delivered, or of money advanced where part payments
had been made, or of every contract, express or implied, consist-
ing of various items of which different sums of money have
become due and different payments have been made.   Although
the line may not be drawn with absolute precision, yet it may

be safely affirmed that a court of chancery cannot draw to itself every transaction between individuals in which an account between parties is to be adjusted.    In all cases in which an action of account would be the proper remedy at law, and in all cases where a trustee is a party, the jurisdiction of a court of equity is undoubted.    But in transactions not of this peculiar character, great complexity should exist in the account or some difficulty at law should interpose, some discovery should be required in order to induce a court of chancery to exercise jurisdiction."

I am constrained to hold that there should be a decree denying the accounting.