The trustee in bankruptcy of the Alpha Chemical Works, Incorporated, a Delaware corporation, sues to recover from directors salary paid to the president and other moneys alleged to have been misappropriated.
The corporation was formed in April, 1917, and took over the assets of a company of the same name formed three months before under the laws of this state, assuming its obligations. The financial interests and the officers of the two companies were identical. The World War was on, and the business was the manufacture of war time chemicals. Lester C. Burdette, a young New York lawyer, promoted the enterprise. He was president of the companies. His brother, George, and a friend, Von Cleff, were his associates and fellow directors. The manufacturing of phenol was the first undertaking. That was abandoned when a fire occurred a few months after the company started. The next was salicylic *Page 80 
acid which proved a failure. That was followed in September, 1918, by para explosives. The business collapsed with the armistice and the company was adjudged bankrupt three months later.
Burdette, as president, drew a salary of $300 a month to October, 1918, and $500 a month for the next three months. The company leased offices in New York. Burdette had two successive law partnerships occupying the same offices. The company paid the office expenses fixed at $300 a month. The monthly salary of the president had been resolved by the directors of the former New Jersey company, and the Delaware company, having assumed its obligations, continued it and also agreed to the monthly office expense fixed at $300. The office expense and some of the president's salary were remitted to Burdette's law firm and it in turn paid the actual out-lay. In 1918 the Bradette Company was formed ostensibly as a selling company and, it is said, took over the office and assumed the expenses from October first. At the same time Burdette's salary was raised to $500 a month by resolution of the directors. Twenty-five hundred dollars was advanced to the Bradette Company for commissions earned and to be earned on sales of the Alpha company's wares. The money advanced was used, in part at least, to pay the office expenses. The salary, office expenses and the money advanced it is charged, were misapplication of corporate funds.
A contract to pay a president salary is valid, subject to review by this court as to amount. Mitchell v. United BoxBoard and Paper Co., 72 N.J. Eq. 580.
It is the complainant's argument that Burdette was not entitled to compensation because the enterprise was not successful. That is neither reasonable nor fair. All his time and energy were devoted to making it succeed. It was not lack of spirit nor effort nor labor on his part that it did not. War materials had the call of the day. He, like many others who succeeded where he failed, saw a chance, or thought he did, to make a fortune. He interested Von Cleff, whose mother had some means, and together they bought a discarded plant at Bound Brook and equipped it. Burdette's father-in-law, *Page 81 
Brady, a man of modest wealth, helped him. The initial investment was some $31,000, including $16,000 of debts, when the plant was turned over to the Delaware company. The change from phenol to salicylic acid, after the fire, involved an outlay of $50,000 for new machinery and later when para products were decided upon, $30,000 more was required. Burdette did the financing. True, his father-in-law's funds were more or less at his disposal, but he induced others to invest; one, a tight-fisted money-lender to the tune of $25,000. The prospects were bright. Meanwhile money had to be raised and credit obtained for operating. Burdette bought the installation, or helped; he bought raw materials and sold the finished product, together approximating $500,000, and he made the contracts and the collections. Of course, he had assistance, some competent, in managing the business, but he had the supervision. He had the final word. The responsibility was upon him. If success in business were the price of compensation, few would pay the fare. The salary is not open to adverse criticism. The increase to $500 a month was not warranted. There was no change in service or circumstance that earned it. There must be an accounting for the excess.
The appropriation of flat $300 a month to Burdette's law firm for office expense cannot be sanctioned. An office in New York may, under the circumstances, have been essential; and in Burdette's law office perhaps advantageous. They were matters of judgment of the directors and the bona fides is not challenged or reviewed. But saddling the entire cost on the company for only a share of the benefit was an imposition. It may well be that the law partnership business was negligible; that is irrelevant. The partners were fledglings, neither having practiced independently, both had been law clerks, but it was manifestly unfair to make their venture at the bar at the company's expense. They should have paid their share of the joint use of the office and facilities. There will be an accounting. The company will be charged with one-half the normal expense and with such items of which it had exclusive benefits. *Page 82 
The accounting will include the $2,500 advanced to the Bradette Company. Paying to that company a commission on purchases and sales was a scheme of the directors to set aside a percentage of the income of the Delaware company for Burdette's father-in-law Brady, who had advanced a large amount, $60,000 of its capital, to give him an immediate profit on his investment instead of waiting for a stock dividend. It was no doubt done with good intentions, in appreciation of Brady's financial assistance, but the additional burden on the Delaware company cannot be justified. That company, in fact, continued to pay the office expenses and its officers carried on as before. Crediting the Bradette Company with earned or unearned commissions was mere bookkeeping. The advancement to it to enable it to pay office expenses, was artifice.
Primary liability will fall upon Burdette, secondarily upon the directors. Von Cleff was not served with process; judgment cannot go against him. Pennoyer v. Neff, 95 U.S. 714.
Decree accordingly.