Complainant is the trustee in bankruptcy of E.C. and J.B. Kern, Inc., (hereinafter called the Company), adjudicated a voluntary bankrupt on May 31st, 1932. The amount due to creditors, over and above the proceeds of the assets of the Company, is approximately $12,000, besides administration expenses.
The three defendants were the directors of the Company at the time of, and for a period of six years prior to, the bankruptcy, and during the same period the defendant Edward Kern was its president and the defendant John Kern was its secretary and treasurer.
The bill charges that the defendants as directors were guilty of both misfeasance and gross negligence in the discharge of their duties as directors, and thereby caused and permitted the assets of the Company to be misappropriated and wasted; that the defendants Edward Kern and John Kern wrongfully *Page 117 
took and received moneys of the Company to which they were not entitled; that the three defendants, as directors, wrongfully continued to carry on the business of the Company after it had become insolvent, instead of winding up its affairs for the benefit of the creditors, and thereby further wasted the Company's assets; that no accounting was ever made to the Company by the defendants or any of them, for the assets which came to their hands.
The bill prays decree that the defendants jointly and severally account to complainant for all assets of the Company which came into their hands; that they pay to complainant the sums found due on such accounting; that they pay to complainant the sums misappropriated by them; that they pay to complainant the sums which they caused or permitted to be wasted or misappropriated by their misfeasance or by their gross negligence as directors and officers.
Preliminarily the defendants contest the right of complainant to bring or maintain this suit, alleging that it has not been authorized by order of the bankruptcy court and is not maintainable without such authorization. It is deemed that this contention is without merit. Complainant as trustee in bankruptcy is vested with the title to all the assets and choses in action of the corporation. Bankruptcy act, par. 70, A. His title, powers and duties are essentially similar to those of a statutory receiver in insolvency under our own Corporation act. His situation is entirely unlike that of the usual equity receiver, who is simply an agent of the court which appoints him and whose powers are limited to those given him by the orders of the court. The Bankruptcy act itself imposes on a bankruptcy trustee the duty of collecting and liquidating the assets of the bankrupt, and gives him the necessary power, — par. 47. The provision that he is to act "under the direction of the court" is a general provision, and does not require that he must obtain an authorizing order before bringing any action. He may bring suit on his own responsibility, without any such order, — (although such orders are frequently obtained by a trustee in order to protect himself against the possibility of being personally charged *Page 118 
with the expense thereof). Traders' Ins. Co. v. Maun, 11A.B.R. 269; Porter v. Hughes, 38 A.B.R. 596; Callahan v.Israel, 186 Mass. 383. Moreover an adequate order has been obtained since the suit was commenced.
It is also contended by the defendants that the three defendants are the sole stockholders of the Company, — (which is a proven and admitted fact); that by reason of that fact the complainant represents no interest of any stockholder; that the jurisdiction of this court to entertain such a suit as the present rests upon its jurisdiction over trusts and fiduciary relationships; that no fiduciary relationship or duty exists on the part of officers or directors of a corporation other than to the stockholders of the company; hence, since complainant is not suing in the right or interest of any stockholder, he cannot maintain this suit in this court. Neither the last premise, nor the conclusion, is true.
The relationship between an agent and his principal is that of a fiduciary, Young v. Hughes, 32 N.J. Eq. 372; especially where the agent is entrusted with the moneys and property of the principal, and has the right and duty to manage, control and deal with such moneys and property. Particularly is it true that the relationship of a corporation's director to the corporation is that of a fiduciary. 14a C.J., 97, par. 1866. It is a trust relationship, Stewart v. Lehigh Valley R.R. Co.,38 N.J. Law 505, at 522; Marr v. Marr, 73 N.J. Eq. 643. Likewise as to the relationship of the officers of a corporation to the corporation, — 14a C.J. 99, — and especially of the treasurer, general manager and president.
Equity has jurisdiction in litigation involving such a fiduciary or trust relationship. Not only does it have jurisdiction in a suit by the principal for an accounting from the fiduciary, — Bellingham v. Palmer, 54 N.J. Eq. 136; 1 C.J.621, par. 68; it also has jurisdiction of suits against the fiduciary to recover for acts of misfeasance and of gross neglect, Williams v. McKay, 40 N.J. Eq. 189; Halsey v.Ackerman, 38 N.J. Eq. 501.
The fiduciary relationship of the officers and directors is directly to the corporation, — the principal of which they are *Page 119 
the agents, — (although a fiduciary relationship exists also to the stockholders of the corporation). The enforcement of liability arising out of that relationship may be had in this court at the suit of a statutory receiver in insolvency, even though solely for the benefit of creditors. Hayes v. Pierson,65 N.J. Eq. 353, affirmed, 45 Atl. Rep. 1091; Mills v.Hendershop, 70 N.J. Eq. 258. See also Lillard v. Oil, Paint Drug Co., Ibid. 197, at pp. 204-5. And in the opinion of the appellate court in Appleton v. American Malting Co., 65 N.J. Eq. 375,
it is specifically pointed out that the bill filed by stockholders against directors was to enforce the right of action inherent in the corporation. Cf. also Landis v. Sea IsleCity Hotel Co., 53 N.J. Eq. 654.
As has already been said, the status of a trustee in bankruptcy of a bankrupt corporation is essentially the same as that of a statutory insolvency receiver under our Corporation act. He is entitled therefore to maintain suit, against officers and directors of the bankrupt corporation, by virtue of the right which originally inhered in the corporation and which passed to him by operation of law, on his appointment as trustee of the adjudicated bankrupt. Decree in such a suit was made in McMahon
v. Burdette, 106 N.J. Eq. 79; and although some of the provisions of the decree were modified on appeal, the contention that this court had no jurisdiction was adjudged untenable, and the court said, "The proceeding was in fact a suit by the corporation itself, through its trustee in bankruptcy, against an officer and directors to compel restitution of funds of the company said to have been illegally paid and expended."
The reason for this is obvious upon due consideration. An officer or director of a corporation is liable to the corporation for embezzlement or misappropriation of funds of the corporation. It is also well settled that such liability also exists in the case of loss of corporate funds or property occasioned by the gross negligence of an officer or director. Such liabilities to the corporation, — choses in action, — are just as much assets of the corporation as are the contractual liabilities of the makers of promissory notes held by the corporation, *Page 120 
or the contractual liabilities of its merchandise debtors, — the corporation's accounts receivable. If the corporation owes no debts, — if the corporation has no liabilities to any one but its stockholders, — the stockholders collectively may forgive and waive the enforcement of any and all liabilities due to the corporation since none but they are concerned.
Not so however if the corporation owes debts to creditors. In that case the stockholders cannot forgive the debts due to the corporation, leaving its creditors unpaid, any more than they would have the right to take the corporation's money out of its bank account and divide it up amongst themselves. So likewise, when the title to the corporation's assets has passed to a statutory receiver or a trustee in bankruptcy, the stockholders cannot prevent such receiver or trustee from endeavoring to collect liabilities due from officers or directors any more than from collecting moneys due on notes or accounts receivable. It is the right and duty of such receiver or trustee to collect on all the assets of the corporation and distribute the proceeds first to the corporation's creditors and after they are paid in full, then to the corporation's stockholders. If the stockholders so desired and all agreed, doubtless they would have the right to require that the receiver or trustee should proceed no farther in the collection of assets than the amount necessary to pay creditors and administration expenses; but assuredly they cannot control his collection of the latter amount. The creditors have the right to have the assets of the corporation collected and applied to the payment of the debts due to them from the corporation; and this right is superior to any right of the stockholders.
The complainant therefore has full and complete right to bring and maintain this suit in this court.
Complainant claims, in the right of the corporation, under the pleadings and proofs in the case, the right to decree for payment to him by defendants for the following specific liabilities:
1. $3,000 a year, unlawfully paid by John Kern, treasurer of the corporation, out of the funds of the corporation, to Edward Kern, in each of the six years 1926 to 1931 inclusive, — (so-called "salary payments"). *Page 121 
2. $5,000 a year, unlawfully paid by John Kern, treasurer of the corporation, to himself, out of the funds of the corporation, in each of the same six years; and also $100 a week, similarly paid, in each week of 1932 up to May 31st, — (so-called "salary payments").
3. An unspecified aggregate of payments unlawfully made by John Kern, as treasurer, out of the funds of the company, to Edward Kern during the same period of six years, — (so-called "chattel mortgage payments").
4. $19,000, being the aggregate of funds of the company in the hands of John Kern as treasurer, during the same period, for which he never accounted to the corporation and for which he has not accounted in this suit.
For these amounts liability by all three defendants, as directors, is claimed on the ground of gross negligence. Liability by John Kern, for misfeasance as treasurer, is also claimed in respect of the unlawful payments made by him and the funds for which he has failed to account. Liability by John Kern and Edward Kern for the return of the unlawful payments knowingly received by them is of course also claimed.
It is proven and admitted that the corporation was voluntarily adjudged bankrupt on May 31st, 1932; that it, by its officers, at that time filed schedules showing debts of $15,000; that during the period January 1st, 1926, to the date of bankruptcy the three defendants were directors of the company, defendant Edward Kern was president, and defendant John Kern was treasurer. Defendant Fannie Kern was the wife of Edward, and the mother of John.
It is proven and not denied that during the same period payments were made by John Kern, treasurer, out of the funds of the company, to Edward Kern, which, it is contended on behalf of defendants, were lawfully made and received, as salary due to Edward as president. Edward was president: if he, as such, performed certain services for the company, he would be entitled to some compensation therefor. There was no express contract between the company and himself, — no resolution or other action of the board of directors, nor *Page 122 
anything even colorably purporting to be an agreement as to any fixed or definite amount to be paid and received as and for such salary.
The showing made in the proofs, as to the so-called salary payments to Edward, is that $2,320 was so paid in 1926, $3,000 in 1928, and $3,000 in 1929; there is no showing of any other such payment in any of the other years in the period specified in complainant's bill, (and of course we are not concerned with any such payments made prior to the period counted on in the bill). As to the payment in 1926, it is concluded that complainant has not adequately established that it was excessive for the services performed during that year, — and of course the burden in that behalf was upon complainant. During that year Edward was still the owner of most, if not practically all, the stock of the company; John had not then bought him out; it was still, so to speak, Edward's business, and presumably he did work in and about the management and operation of the business reasonably entitling him to a salary of that amount.
In 1927 John bought Edward's stock, and thereafter Edward did little, if any, work for which he would be entitled to compensation, although he says he did perform some services "in an advisory capacity." However we need not give any further consideration to any question of how much salary Edward was entitled to after 1926, for he drew none in 1927, 1930 or 1931, and Edward himself testified in this suit that although the $3,000 in 1928 and 1929 was called salary, it was actually received by him as payment of the amount "due him on the mortgage," — i.e., the indebtedness due him from John for the stock which John had bought from him. So that although these two yearly payments of $3,000 each were reported by John to the federal government as salaries paid to Edward, they were in fact not salaries, but moneys withdrawn from and paid out of the corporation funds for John's individual benefit. In that aspect they will be further considered hereafter.
Next as to the salary payments to John Kern. His testimony is, — and it is not contradicted, — that his work included *Page 123 
running the company, examining eyes, grinding and fitting lenses, repairing jewelry, selling goods and keeping books. The salary therefore was not a mere salary for simply acting as secretary and treasurer of the corporation, — it included wages or salary as an employe. The father Edward testified that the reasonable value of the services rendered to the corporation by John in the year 1930 was, — "I would be willing to pay him about — well, I couldn't get a man to assume his position for $100 a week." Assuredly Edward did not make this figure too low; moreover that is precisely what John was paid by the company while Edward controlled it, and there is nothing to show that there was any difference in the amount of work or duties.
On the one hand, then, it seems clear that $100 a week, $5,200 a year, was a reasonable salary for John, during the period in question. On the other hand, it is equally clear that that was
his salary, that he was not entitled to more. John himself, speaking generally as to the whole six-year period, testified that his salary was $100 a week; and it is incontrovertible from the record evidence that that is what his salary was in 1924, 1925 and 1926 and there is not a scintilla of evidence that the corporation ever increased his salary, either by direct action or by estoppel. It is concluded therefore that John was entitled in the period in question, to $5,200 a year, and no more.
It is established by the proofs that in fact he drew from the company as salary, $5,733.69 in 1927; $9,670.52 in 1928; $6,755.89 in 1929; $6,047.92 in 1930; and $5,698.66 in 1931, — a total aggregate excess of about $8,000. For each of these excess amounts overdrawn by him, paid by himself to himself out of the company's funds, without warrant, a liability to repay, with interest, naturally arose. No authorization for the over-payments is in anywise shown, — either from directors or stockholders; and no estoppel can arise in favor of John against the company, for he himself as the company's treasurer made the payments, and he individually knew that the company's treasurer had no right to make such payments to him. *Page 124 
Next as to the third claim of complainant, — for unlawful payments (other than salary payments), made by John to Edward during the six-year period. The payments actually so made, as established in the proofs, are not shown to be any other amounts beyond the payments of $3,000 a year in 1928 and 1929, hereinbefore referred to. As to those, however, there can be no question. They were payments made by John out of the company's funds, without warrant or authorization therefor, for his own individual benefit; and as to each of these annual payments a liability arose from John to the company for repayment with interest.
Complainant's last claim is for the sum of some $19,000 of corporate funds which came to the hands of John Kern as treasurer and for which he has never accounted to the company or to complainant. The proofs show that $19,510 was withdrawn from the company's bank account, (most of it in amounts in "round figures"), during the period commencing in January, 1930, and running down to the date of bankruptcy; that no accounting for this or any of it was made by John to the company; and he has utterly failed to account for it in the present suit although called upon so to do, and given every opportunity so to do. Moreover, although he was the secretary and the treasurer of the company, he failed to turn over to complainant or to produce in court in this suit, any books or records from which any kind of an accounting might have been made up for him.
As treasurer, and having possession and control of the funds of the company, he was a trustee; he is liable for the funds so received unless he can show that he properly paid them out for the company's benefit and on the company's account. This he has not done. The burden was upon him so to do. If his failure was due to inability because of having failed to keep proper records and vouchers, that is his own fault. Smith v. Robinson,83 N.J. Eq. 384. On the proofs, his liability for the amount in question is clear.
So much for the liability of John Kern. The liability of Edward to repay, with interest, the $6,000 received by him from the company in payment of John's individual indebtedness *Page 125 
is also clear. There remains the question of the liability of Edward Kern and Fannie Kern for the other misconduct of John.
That the directors are liable to the corporation for loss occasioned to it by their gross negligence cannot be controverted. They are personally liable if they suffer the corporate assets to be misappropriated or otherwise wasted, by gross negligence and inattention to the duties of their trust.Ackerman v. Halsey, 37 N.J. Eq. 356, at 364; Williams v.McKay, supra; S.C., 46 N.J. Eq. 25.
That these directors were guilty of gross negligence is equally incontrovertible from the proofs. The language of Chancellor Runyon in Ackerman v. Halsey, supra, is equally true and completely applicable to the instant case, — "absolute neglect by the defendant directors of all the essential duties of their office." No directors' meetings, formal or informal were held; Edward Kern and Fannie Kern did not know and did not attempt to know anything about the company's condition or affairs or how John was managing it or what he was doing with its assets, — except that Edward says he was consulted occasionally "in an advisory capacity," — and this presumably (from the other testimony) only in relation to technical matters of optometry.
That by reason of this gross negligence the directors are chargeable with liability for the losses mentioned seems equally true, although it is perhaps not so immediately obvious, especially as regards Mrs. Kern. The duty of the directors is to give the same attention and care and honest judgment to the corporation's management, conduct and affairs as they would give to their own; and to exercise that honest judgment for the best interests of the corporation, not of one or more or all stockholders. Nothing of that kind was done or attempted to be done by either Edward Kern or Fannie Kern. If they had performed their legal duties they necessarily would have known of John's misconduct, — that he was paying himself more salary than he was legally entitled to; that he was paying his individual debts out of corporate funds; and that he was receiving corporate funds and making *Page 126 
no account for his disbursement thereof. If they had known of these things and had done their legal duty in the light of such knowledge, they would have compelled him to cease the misconduct and to restore the funds. It is no answer to say that if they had so acted, John as holder of practically all the stock, could have ousted them at the next annual stockholder's meeting and put in other directors. We must deal with what was done, not what might have been done; moreover, any other directors whom John might have put in would have been under the same duty, and it is not to be presumed that such other directors as might have been put in would not have performed their legal duty.
Neither can it be considered in derogation of the liability of the directors, that if they had done their duty as above mentioned, John could, and probably would, have had a stockholders' unanimous authorization for a raise in his salary or the declaration of dividends. The answer to that is again that we are not to speculate on what might have been done, but to deal with that which was done; and that moreover, the mereauthorization by the stockholders, (which was all that was within their power) for raise in salary or the declaration of dividends, would by no means necessarily have resulted in action by the directors in accordance with such authorization. It would still remain the duty of the directors to act honestly for the best interest of the corporation, and it assuredly cannot be said with certainty that if the directors had acted in that way they would necessarily have given the raise in salary or declared the dividends. Their acts in that behalf would have depended on their honest judgment in view of all the circumstances and conditions — and we have no knowledge, or only the most imperfect and incomplete knowledge as to what those circumstances and conditions were.
It must be borne in mind that the 30th section of the Corporation act forbids the reduction of the capital stock by the payment of dividends, and it cannot be doubted that this prohibition would forbid such reduction as well by payments to a stockholder in the guise of salary as by the declaration of dividends in regular form. The capital stock paid in (or *Page 127 
subscribed for) is a trust fund for the payment of debts, of which the directors are trustees and which they cannot dispose of to the prejudice of creditors. Easton Nat'l Bank v. AmericanBrick Tile Co., 70 N.J. Eq. 732, at 739. The capital stock of this company was $24,600. From the evidence it is clear that the assets of the company, representing this capital stock, was made up in large part, if not entirely, of accounts receivable, the real value of which was subject to very considerable discount from the face value, and of stock on hand of jewelry and the like, the actual value of which (by John Kern's own testimony) was subject to constant reduction for obsolescence but as to which (again by his own testimony) no reserve had been set up or any other discount for obsolescence from the original cost, although much of the stock had been on hand for a considerable time.
In view of these facts it assuredly cannot be said that directors performing their legal duty honestly, would necessarily have increased John's salary or declared him a dividend, as the result of unanimous authorization by stockholders.
Neither can it be said, to avoid liability on the part of Mrs. Kern, that it would have been of no avail for her to have performed her legal duty because she would have been overruled by Edward and John. The fact remains that the losses occurred from the failure of both to perform their legal duty; and it is not to be presumed that if both had performed their duty, acquainted themselves with their legal duties, liabilities and responsibilities as directors (as of course it was their duty to do), and if Mrs. Kern had made an honest effort to perform her full duty Edward would have willfully and intentionally acted dishonestly in that regard.
Those who assume to act as directors of a corporation do
assume legal duties and responsibilities. Their ignorance of those duties and responsibilities cannot excuse their failure of performance. There has been far too much utter negligence by directors, who fail to realize that they do have legal duties and responsibilities, — and the losses occasioned thereby to other persons doing business with their corporations must be enormous. In most instances the establishment of the *Page 128 
legal liability is such a difficult and expensive matter that it is seldom attempted. Where such liability is established, there is no reason why it should not be enforced.
The defendants however put forward one final contention, upon which indeed they place their main reliance, — namely, that whatever liability might otherwise exist on the part of defendants, there can be no liability unless creditors were injured by the misconduct complained of, and that complainant must show, but has failed to show, that the company was insolvent when these acts took place. The argument of defendants in this behalf is essentially to the following effect:
1. That as long as a corporation continued to be solvent, — has assets sufficient to pay its creditors, — the disposition or diversion of its assets is a matter which concerns no one other than its stockholders.
2. That any improper or unlawful diversion or disposition of assets of the corporation, caused or permitted by corporate officers or directors, which occurs prior to insolvency (and which does not itself create corporate insolvency), may be ratified, acquiesced in or condoned by the stockholders if all
stockholders concur, and such ratification will operate to release or discharge the liability on the part of the officers and/or directors which might otherwise exist.
3. That such ratification or other action by the entire body of stockholders, discharging or releasing any and all liability of officers or directors for acts of malfeasance or negligence occurring prior to insolvency, may take place (and be equally valid and effective) as well after as before insolvency has occurred; and that such a ratification and discharge (by all the stockholders), made after the company has become insolvent and a receiver or trustee in bankruptcy has been appointed for it, will preclude the enforcement by such receiver or trustee against the officers and/or directors, of the liability by them to the corporation which would otherwise exist.
4. That in the instant case all of the stockholders have agreed to ratify the acts of the officers and directors (relied on by complainant trustee as the basis for the recovery sought *Page 129 
by him), and to release and discharge the said officers and directors of and from any and all liability by reason thereof; and that notwithstanding such action by the stockholders was not taken until after insolvency and the appointment of the trustee, it is valid and effective so far as concerns any and all conduct on the part of the officers and directors which occurred prior to the company becoming insolvent; that, therefore, the complainant trustee can only be entitled to recovery from the defendants in the present action, for liability in respect of acts and conduct of defendants which occurred after the company had become insolvent; that, therefore, complainant must prove that the company was insolvent at the time of the acts and conduct relied upon by him as the basis for recovery; that the company was not insolvent, — or at least that complainant has failed to prove that it was insolvent, — at or prior to any of the acts or conduct complained of; consequently that complainant is not entitled to any recovery.
For the purposes of the present argument only, we may assume the correctness of 1 and 2 of the foregoing propositions, — (that they are not fully correct as stated is evident by reference to section 30 of the Corporation act), — but we are unable to concur in proposition 3; and if the latter be unsound, the conclusions reached in proposition 4 are unjustified.
We must start with the fact that in the eyes of the law, — (and it is to be remembered that equity follows the law except, and until, modification of legal principles by equitable principles becomes necessary in order to prevent fraud or injustice), — a corporation is an individual entity or (artificial) person, just as separate and distinct from the individual persons of its officers, directors and stockholders as the latter individuals are from any natural person who is a stranger to the corporation. The stockholders, singly or collectively, are not the corporation; neither are the officers nor the directors. The corporation can act only by and through the agency of individuals but the agents of the corporation are just as separate and distinct from the corporation principal *Page 130 
as are the agents of a natural person principal. The corporation may be deemed in some sense a trustee with its stockholders ascestuis, but as such trustee it is an entity or individuality separate and distinct from those of the stockholders. The corporation, — not the stockholders, — is the owner of the corporate property and assets. And of course the individuality of the corporation as a person (albeit an artificial person) is most easily recognized (and is subject to less confusion of thought) in its relationships with its debtors and creditors and other outside parties.
A debt due to a corporation from an outside party, for work done, goods sold, or the like, is an asset of the corporation. The corporation may transfer an asset, — or may discharge or release a debt due to it, but it is only the corporation itself, — the owner of that asset or chose in action, — which can do this, legally. Unless and until the corporation does discharge or release the debt, it remains an asset of the corporation. If the debt has not been discharged or released by the corporationbefore the corporation becomes bankrupt and a trustee appointed, the debt is an asset in the hands of the trustee. Title is in the trustee, under the statute, and thereafter the debt cannot be discharged, released or assigned by any action of the officers, directors or stockholders of the corporation or of any one else other than the trustee.
The same thing must obviously be true as to any and all other liabilities to the corporation, including those due from directors, officers or other agents of the corporation. If the corporation's treasurer misappropriates moneys of the corporation, a liability from him to the corporation arises thereby; if by the negligence or wrongful acts of directors of the corporation loss is occasioned to the corporation, liability to the corporation arises thereby, just as when by the negligence or wrongful acts of an outside party, an automobile of the corporation is damaged; these liabilities, — the rights of action, — if not theretofore satisfied by those liable or discharged or released by the corporation, pass to the trustee in bankruptcy and cannot thereafter be affected by any acts of the corporation's officers, directors or stockholders. *Page 131 
Discharge and release are affirmative defenses; the burden of introducing proof thereof rests on the defendants. No proof whatever is offered by defendants, nor otherwise appears, in the instant case, of any such action by the corporation, — no resolution by the directors, no act of corporate officer, not even any action by the stockholders prior to bankruptcy. The evidence in fact is directly to the contrary; the evidence from the defendants themselves is that no directors meetings, nor stockholders meetings took place during the six-year period in question, — that the business was run entirely by the defendant John Kern, (who held all the stock except two shares) just as though it was his own individual business.
There can be no presumption, in the instant case, of any such action by either directors or stockholders. Assuming, but by no means conceding, — that any such presumption might otherwise arise, the evidence in the case utterly rebuts it. There can be no discharge nor authorization to discharge without intent so to do; there can be no such intent without knowledge; the evidence from the defendants themselves is that the defendants Edward Kern and Fannie Kern had no knowledge as to John Kern's conduct of the business, and they therefore had no knowledge as to the wrongful withdrawals, or diversions of corporate assets by John Kern, or as to his liability for corporate funds received by him for which he did not account. It is obvious, therefore, — Edward and Fannie being the majority of the board of directors, — that no discharge of John's liability was ever made by the directors. Of course Edward as well as John is chargeable with knowledge of the improper amounts paid to Edward out of the corporate funds, but they would be committing a wrongful act if as directors they should vote to discharge Edward's liability in this behalf, — unless they were authorized so to do by unanimous consent of the stockholders. The doing of an unlawful act will not be presumed; and the act would have been unlawful in the present case, because there was no authorization thereto by unanimous consent of the stockholders, — there could not have been, because Fannie Kern, one of the stockholders, knew nothing about it. The same *Page 132 
thing is of course true as to any presumption of discharge of the directors from liability for loss occasioned by their negligence.
For the same reasons, if not indeed for others as well, there can be no presumption of implied authorization, prior to the improper withdrawals and payments, for the making of such improper withdrawals and payments.
Moreover, even if we should assume that John Kern was the beneficial owner of all the stock, — that the single shares respectively held by Edward and Fannie were held by them only for the purpose of qualifying them as directors, (which was very likely the case, although it is not recalled that there was any actual testimony to that effect), — that the business was in fact wholly that of John Kern, carried on through the corporate medium; it is not perceived that any different result should ensue therefrom.
It might be argued that if John Kern was the beneficial owner of all the stock, then in substance he was the corporation, and the owner of the corporate property, — except to the extent necessary to pay the corporate debts; that he had, in his capacity as such owner of all the stock, (being the same individual) full knowledge of the diversions of corporate funds made by him in his capacity as treasurer, and that therefore in equity it should be deemed that such diversions had been authorized by all the stockholders, at or prior to the time such diversions were made, and hence no liability ever arose or existed from him to the corporation in respect of such diversions (unless it be proved that those diversions made the company insolvent or were made when the company was already insolvent).
Such an argument, however, it would seem would be clearly unsound. There never was in fact any such authorization by the stockholders; such an authorization, legally, would have had to be made by the stockholders at a meeting and there never was any such meeting; Edward Kern and Fannie Kern were in fact the legal holders of two shares of stock, and they never authorized the acts in question, either at a stockholders meeting or otherwise. It is doubtless true that *Page 133 
equity could, and would, in a proper case, disregard the legal technicalities and look through the form to the substance in order to do equity. But what reason is there in the instant case for it to disregard the legal situation? What equity would thereby be accomplished which would move equity so to act? It is not perceived that there is any equity in favor of John Kern.
The situation is one where one side or the other, John Kern or the creditors, must suffer loss. Under legal principles that loss falls on John Kern. There is no reason why equity should intervene in order to save him that loss and make the creditors suffer it instead. They are, to say the least, as free as he from negligence and wrongful conduct legal or equitable.
It is no argument to say that John Kern could have had his acts authorized or ratified by all the stockholders, prior to bankruptcy, and that therefore it should be deemed that he had done so, — that he should not be penalized for a mere technical oversight. The fact is he did not do so, — there was no such authorization or ratification, and even if it was a mere oversight on his part, that constitutes no reason why equity should intervene. Neither the creditors nor the corporation in anywise caused or induced such oversight. If a man fails to renew his insurance policy, it is no reason for equity to interfere in the legal consequences merely because he meant to renew it and forgot to do so.
Furthermore, it cannot be presumed that even if he had accomplished such an authorization or ratification by all the stockholders, he would have been free from liability for his diversions of corporate funds. All that the stockholders could do would be to authorize the directors to make the diversions or to release John Kern from liability after he had made them. The stockholders cannot compel the directors to take any such action.
The board of directors is the governing body of the corporation and vested with the management of the corporate property, business and affairs. This power resides in the directors by law; it is not conferred by the stockholders and cannot *Page 134 
be revoked or controlled by the stockholders; it is to be exercised by the directors honestly and in good faith, for what the directors, in their honest judgment, deem the best interests of the corporation. The directors occupy a fiduciary position toward the corporation, and are bound to act for the best interests of the corporation; the stockholders do not have any such fiduciary interest toward the corporation and can vote in accordance with their own selfish desires. See, generally, Park
v. Grant Locomotive Works, 40 N.J. Eq. 114, affirmed 45 N.J. Eq. 244; Ellerman v. Chicago Junction Railways, c., Co., 49 N.J. Eq. 217; Stephany v. Marsden, 75 N.J. Eq. 90; Merriman v.National Zinc Co., 82 N.J. Eq. 493; Hilles v. Parrish, 14 N.J. Eq. 380.
Under ordinary circumstances, then, the directors of a corporation would have no right to condone embezzlement or fraud by an officer of the company, and release him from liability therefor. Such conduct by the directors would be a breach of trust toward the corporation, and toward the stockholders of the corporation. If all the stockholders consented to the condonation and release and authorized the directors to take such action, then that action would not be a breach of the directors' fiduciary relationship to the stockholders; but if the directors believed that such action would not be for the best interests of the corporation, — as for instance if it impaired the capital stock as a trust fund for creditors, — then such action would be a breach of the directors' fiduciary relationship to the corporation and would be wrongful on their part notwithstanding the consent of all the stockholders; and the stockholders could not compel the directors to take such action. (On the other hand it is conceivable that there might be circumstances such as to lead the directors to believe it would be to the best interests of the corporation to condone and release a liability for embezzlement, and in such case it would be their duty so to act, even without the consent of all the stockholders.)
The factual probability, under the circumstances of the instant case, is that Edward Kern and Fannie Kern, if they had been asked by John so to do, would have acted with him *Page 135 
in a directors' meeting to pass a resolution ratifying his wrongful withdrawals and releasing him from liability; but there is no reason why a court of equity should presume as matter oflaw, that they would have done so, — much less that they did
do so.
If a man "incorporates himself" and obtains the benefits to himself and his individual property resulting from carrying on such business through the medium of a corporation, he must needs (in the absence of some overriding equity), equally be bound by the burdens, conditions and restrictions which the same law which enables and permits him to enjoy those benefits imposes on the conduct of business in corporate form. When John Kern chose to carry on his business in corporate form, he gave up his right to regard the corporation's property as his own or to have it dealt with in accordance with his sole determination, and limited himself to the methods prescribed by law with respect to the transfer of property from the corporation to himself and to others. He shows no equity entitling him to avoid those restrictions.
It is concluded, therefore, that all three defendants are liable to the corporation, and hence to complainant, for the aggregate of the sums mentioned, — the excess payments to John, the wrongful payments to Edward, and the moneys unaccounted for by John; and that complainant is entitled to decree against them for the payment of so much of that liability as is necessary to accomplish, — together with the balance already in the hands of complainant, — the payment of the claims of creditors allowed in the bankruptcy proceedings plus the unpaid costs of administration and the costs of this suit.
The balance in the hands of the trustee was shown in the evidence as being $1,759.76. The amount due creditors was stated in round figures as $12,000, but there seems to have been no formal proof made of the exact amount. That can be supplied, of course, from the records in the bankruptcy proceeding, — and may be so supplied at the time of application on notice to settle the terms of the final decree; and at the same time the proof as to unpaid costs of administration *Page 136 
can be supplied, and the matter of counsel fee to be allowed to complainant can be determined.
One further provision may be made. It seems to be a recognized principle in cases such as this, that differentiation as to primary and secondary liability may be made, and should be made where possible, based on the greater and lesser degrees of culpability of the several defendants. See Ackerman v. Halsey,supra, at page 365, bottom; and Williams v. McKay, 46 N.J. Eq. 25,
at page 74, bottom. It would seem fair to make such a differentiation in the instant case. The liability of Mrs. Kern is based solely on negligence; she was guilty of neither making or receiving any misappropriation. The primary liability is on John Kern for the entire amount, also on Edward for the $6,000, (and interest) which he knowingly received. The decree may provide therefore as to any payment made by Mrs. Kern in satisfaction of the decree that she have recourse over against John Kern, and that as to any similar payment made by Edward Kern in excess of the $6,000 and interest, he may have recourse over against John Kern.